# Cobb v. Daniel.

## Action of Trover.

1. *Mortgages; conveyance of crop grown by mortgagor.*—A mortgage in which the mortgagor conveys the "entire crop grown by me the present year or which I may aid in or cause to be grown, on my land, or any other lands that I may cultivate, or aid or cause to be cultivated," includes the interest of the mortgagor in cotton raised by his aid and assistance during such year on lands rented by him

2. *Same; priority of lien.*—The lien of such a mortgage is superior to the lien of a mortgage subsequently given by the minor son of such mortgagor on the latter's crop of cotton grown that current year on said rented premises, if the first mortgagor assisted in the cultivation and raising of the crop by his minor son.

3. *Bill of exceptions; copying mortgage therein.*  Where the evidence in a cause speaks of and refers to a mortgage and describes it as having been given to the plaintiff by a certain named person on February 11, and the original bill of exceptions, just after the statement of such evidence, contains the direction, that "here, it is agreed, the

clerk may set out said mortgage in full," but the clerk in transcribing it described it as being dated July 11, but in all other respects the mortgage copied in obedience to such direction corresponded to the one described in the evidence previously shown in the bill of exceptions, the misdescription as to its date will be considered as a clerical error of the copyist, and furnishes no ground for striking the mortgage so copied from the bill of exceptions; it being otherwise sufficiently identified by the testimony shown by the bill of exceptions.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

This action was brought by the appellant, William A. Cobb, against the appellee, William C. Daniel, to recover damages for the alleged conversion of two bales of cotton. Issue was joined on the plea of the general issue. On the trial, as is shown by the bill of exceptions, the plaintiff introduced in evidence a mortgage given by J. C. Ragan to him on February 11, 1890, and due on October 15, 1890, on all the cotton crop grown or caused to be grown by said Ragan during said year. The said mortgage was marked filed and recorded in the the office of the judge of probate of Cherokee county. A copy of the original bill of exceptions, which was certified to this court in response to a writ of *certiorari*, contained just after this statement, the following sentence: "(Here, it is agreed that the clerk may set out said mortgage in full.)" The mortgage, which was set out in the bill of exceptions contained in the transcript, as the one made by J. C. Ragan to W. A. Cobb, bore date July 11, 1890, and the law day of the mortgage was October 15, 1890. There was no entry showing that this mortgage had been recorded.

J. C. Ragan, as a witness for the plaintiff, testified that in 1890 he rented from Tom Wester the place in Cherokee county known as the "Jimmie Wester place," and also a part of the "Joe Wester place." This witness further testified as follows: "In the early part of February, 1890, I gave the plaintiff Cobb a mortgage, which has been introduced as evidence to the jury in this case, and which was the only mortgage I gave said Cobb during said year." This witness further testified that a portion of the "Joe Wester place" was cultivated by his son, John Ragan, who was a minor; that said John Ragan assisted him in raising a crop on other portions

of the "Joe Wester place," and on the "Jimmie Wester place." The cotton in the controversy was raised on the "Jimmie Wester place" by the witness and his son John during the year 1890. All the witnesses for the plaintiff testified that the cotton in controversy was raised by J. C. and John Ragan together, on the "Jimmie Wester place." The evidence for the plaintiff further tended to show that the cotton involved in this suit was carried to the defendant, and that the defendant converted the same to his own use.

The defendant introduced as a witness one Robinson, who testified that John Ragan rented some land from Eph. Ragan, which was on the "Jimmie Wester place," and that the defendant got the cotton that John Ragan made on this land. Upon being introduced as a witness, the defendant testified, that he received the cotton in controversy as a part payment on a mortgage debt of John Ragan to him, which mortgage was executed on May 7, 1890, and the debt for which it was given to secure was made payable on November 15, 1890; that the mortgage was given by John Ragan "on his crop on the Jimmie Wester place that year." The defendant then offered this mortgage in evidence.

There were many charges asked by the plaintiff and the defendant, which it is deemed unnecessary to set out in this statement. There was judgment for the defendant, and the plaintiff appeals.

On the submission of the cause in this court, the appellee moved the court "to strike from the record first filed what purports to be the mortgage executed by J. C. Ragan on the 11th of July, 1890, and due October 15, after date," because, "1st. It is not a part of the bill of exceptions, nor is it so described or identified as to authorize the insertion of the instrument set out in said record. 2d. The instrument described and referred to in said bill of exceptions bears date 11th February, 1890, and the one set out and copied in said record bears date July 11, 1890. 3d. The instrument described and referred to in said bill of exceptions, bears date 11th February, 1890, and purports to have been filed for record on the 12th Feby., 1890, and recorded on page 271 of Book 12, mortgage records, while the one set out and copied in said record bears date July 11, 1890, and does not purport to have ever been recorded."

[Cobb v. Daniel.]

CARDON & DANIEL, for appellant.

DENSON, BILBRO & BURNETT, *contra.*—The instrument referred to in the bill of exceptions was not sufficiently identified to authorize the clerk to copy the instrument he did copy in the bill of exceptions contained in the first record.—*Kyle & Elliott v. Gadsden L. & I. Co.*, 96 Ala. 376; *Moore, Marsh & Co. v. Penn*, 95 Ala. 200; *Pearce v. Clements*, 73 Ala. 256.

COLEMAN, J.—J. C. Ragan rented some land on what is called the "Jimmie Wester place." It seems he also rented a piece of land on the "Joe Wester place." After renting the land he executed a mortgage to W. A. Cobb by which he conveyed the "entire crop grown by me the present year, or which I may aid in or cause to be grown, on my lands, or any other lands that I may cultivate, or aid in or cause to be cultivated." These terms are broad enough to cover whatever interest J. C. Ragan may have had in the crops. The defendant Daniel got possession of some of the cotton raised by the aid and assistance of J. C. Ragan on the Jimmie Wester place, which he converted to his own use. The plaintiff sued him, counting in case in one count and in trover by a second count. The defendant Daniels claimed title under a subsequent mortgage, executed by John Ragan on his "crop of cotton grown the present year on lands formerly belonging to James Wester, dec'd." John Ragan was a minor son of J. C. Ragan, lived with him and worked with him, as his other children. Both J. C. Ragan and his minor son, John Ragan, worked together and made the cotton in question. There is no evidence that J. C. Ragan consented to the execution of this mortgage by his son John Ragan, or ever ratified it, or consented to the removal of the cotton by Daniel under his claim. There is evidence that J. C. Ragan consented to and recognized his son's right to cotton raised on the "Joe Wester place," but there seems to be no controversy as to any cotton raised on the "Joe Wester place." The evidence is not as clear and definite as we would like to have it; but as we construe it, as contained in the record, it shows that the cotton in controversy was covered by the mortgage executed to W. A. Cobb in February, 1890. This being true, it was not competent

[Keith *et al.* v. McLaughlin *et al.*]

for J. C. Ragan himself, much less his minor son, to
execute a subsequent mortgage to Daniel, and thereby
give him a lien prior to the lien of W. A. Cobb. There
is no question of notice raised by Daniel as to the exis-
tence of the Cobb mortgage.

The mortgage contained in the record was sufficiently
identified by the bill of exceptions, to authorize and re-
quire the clerk to copy it in the transcript. The testi-
mony abundantly shows that the word "July" was a
mere clerical error in copying.

Reversed and remanded.