# Gilliland Mercantile Company *v.* Pond Bros.

## *Trover and Case.*

(Decided November 7, 1914. 66 South. 480.)

1. *Mortgages; Future Crops; Present Interest in Land.*—While it is not necessary that the mortgage on future crops should describe the land on which the crop is to be grown, it is necessary that the mortgagor shall have a definite, present interest in the land as distinguished from a mere possible or expectant future interest, if his mortgage is to create a specific lien on such crop as will prevail against third persons who subsequently acquire a specific interest in said crop.

2. *Same; Landlord and Tenant.*—Where a tenant contracted to pay one bale of cotton for the rent of lands for a specific year, and both the landlord and the tenant joined in a mortgage on the crop raised by or for them during that year, such mortgage operated as an assignment of the lien of landlord on the crops raised that year for the payment of the rent, which was prior in right to a subsequent assignment of the landlord's rent note to an assignee with notice.

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by the Gilliland Mercantile Company, a partnership, in the name of the individual members, against Pond Bros., and the individual members as partners and individuals for the conversion of a bale of cotton, and for destroying a lien on such cotton. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The first count was as follows: "Plaintiffs claim of defendant the sum of $95 damages for that whereas during the year 1912 Yancy Lennard and Nancy Lennard grew a crop of cotton in Coosa county, consisting of not less than 500 pounds of lint cotton, the said Yancy and Nancy Lennard having previously on, to wit, December 1, 1910, executed a mortgage to plaintiff on said crop, which said mortgage was duly re-

[Gilliland Mercantile Company v. Pond Bros.]

corded in the probate office of Coosa county on December 13, 1910, as provided by law, and plaintiffs aver that under and by virtue of said mortgage plaintiffs had a lien on said crop of cotton, and plaintiffs aver that on or about October 25, 1912, defendant removed and appropriated to their own use one bale of cotton, weighing about 500 pounds, on which plaintiffs had said lien, to where plaintiffs were unable to enforce their said lien, on said cotton, and said lien has become a total loss to these plaintiffs."

Defendants filed a special plea to this count as follows: "Defendants say that during the year 1911, on, to wit, November 10th, Nancy Lennard was in possession of the following land in Coosa county, Ala., claiming them as her own (W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ S. 35, T. 22, R. 19), and that on November 10, 1911, she rented certain parts of the cultivatable land on said track to Yancy Lennard, to be by him cultivated during the year 1912, for which the said Yancy Lennard undertook and agreed to pay said Nancy Lennard for the rent of said lands for said year one bale of lint cotton weighing 500 pounds, and that he gave his written obligation to the said Nancy Lennard for the payment of said cotton on October 5, 1912, which said obligation and promise created a landlord's lien on the entire crop grown by said Yancy Lennard on said lands during the year 1912, and that the bale of cotton described or mentioned in the complaint was grown by said Yancy Lennard on said lands described above during the year 1912, and defendants aver that said Nancy Lennard for a valuable consideration, and before said rent was due, transferred said obligation and assigned said landlord's lien to defendants, and that they received said bale of cotton in payment of said rent, and in discharge of said landlord's lien, and that they received no other

cotton grown by Yancy and Nancy Lennard, nor either of them, during the year 1912, and that they received no more than was due for rent of said lands by Yancy Lennard for the year 1912."

Plaintiff's demurrer to this plea was overruled. The mortgage referred to in the complaint was duly recorded and was executed on December 1, 1910, by Yancy and Nancy Lennard, and contains the following language:

"On the 1st day of October after date, I promise to pay to Gilliland Mercantile Company, or order, the sum of $135. * * * And to secure same and all other indebtedness now owing or hereafter made to payee by us or either of us, we hereby sell and convey to payee the entire crop of corn, cotton and other produce *raised by us or for us* during the present year, and each succeeding year until this indebtedness is paid in full."

The rent note of Yancy Lennard referred to in plea 2 and under which by assignment defendants claim a superior lien, on the bale of cotton in question was executed November 10, 1911, and contained a promise to pay on October 15, 1912, to Nancy Lennard the just and full sum of one bale of lint cotton, weight, 500 pounds. There was no material conflict, and the evidence showed the following facts: On December 1, 1910, and for 10 years previously, Yancy Lennard was living on the land owned by his mother, Nancy Lennard. He remained on the said land in 1911, and also in 1912. The bale of cotton in question was raised by him on this land in 1912. It was delivered by him to defendant, who sold it and shipped it away. The land was rented by Nancy Lennard to Yancy, in November, 1911, for which the rent note was given. The rent note was duly assigned to Pond Bros., and the cotton sold

at 10.90 cents per pound, and its highest value there-
after was shown to be 14 cents per pound. On this evi-
dence the trial judge gave the general charge for de-
fendant and refused a like charge to plaintiff. The er-
rors assigned are on the demurrers to the plea and these
charges.

RIDDLE, ELLIS & RIDDLE, for appellant.

S. J. DARBY, for appellee.

SOMERVILLE, J.—There being no material conflict
in the evidence, the only real question in the case is
whether, as matter of law, the mortgage given to plain-
tiff by Yancy Lennard and his mother, Nancy Lennard,
in December, 1910, "on all crops  *  *  *  raised by
us [them] during the present year [1911] and each
succeeding year," fastened a lien on a bale of cotton
grown on the same land in 1912 as against both of the
mortgagors. If it did, then plaintiff's lien on the cotton
was superior to any lien in favor of either of the mort-
gagors subsequently springing from their relation of
landlord and tenant, and of course superior also to the
lien of any assignee of either, having notice of the mort-
gage.

It is not necessary that a chattel mortgage of future
crops should describe the land upon which such crops
are growing or to be grown.—*Varnum v. State,* 78 Ala.
29; *Paden v. Bellenger,* 87 Ala. 575, 6 South. 351; *Cobb
v. Daniel,* 105 Ala. 335, 16 South. 882; *Woods v. Rose,*
135 Ala. 297, 301, 33 South. 41. It is necessary, how-
ever, for the creation of a specific lien on such crops—
such as will prevail against third persons who subse-
quently acquire a specific interest therein—that they
must be the contemplated product of land in which the

mortgagor has a definite *present* interest, as distinguished from a mere possible or expectant future interest.—*Paden v. Bellenger,* 87 Ala. 575, 6 South. 351, citing *Grant v. Steiner,* 65 Ala. 499; *Mayor v. Taylor,* 69 Ala. 403, 44 Am. Rep. 522, and *Burns v. Campbell,* 71 Ala. 288; *Fields v. Karter,* 121 Ala. 329, 333, 25 South. 800; *Karter v. Fields,* 140 Ala. 352, 364, 37 South. 204; *Winham v. Stephenson,* 156 Ala. 341, 47 South. 280, 19 L. R. A. (N. S.) 910, 130 Am. St. Rep. 102.

There is, to be sure, a line of cases in this state which hold that a mortgage of chattels, to exist or to be acquired in the future, and having no present potential existence, is enforceable in equity, as attaching to the goods as soon as they exist in the mortgagor's ownership, whether against the mortgagor or his vendee or assignee with notice of the mortgage.—*Hurst v. Bell,* 72 Ala. 336; *Cox v. Birmingham Dry Goods Co.,* 125 Ala. 324, 28 South. 456, 82 Am. St. Rep. 238. See, also, 6 Cyc. 1052, 2, and cases cited. And it would seem that the case of *Hurst v. Bell, supra,* cannot be reconciled with the later cases already cited above. However this may be, the doctrine that such a mortgage as the one here exhibited creates no lien, present or prospective, for the reason that the mortgagor had no present interest in the land on which it was grown, must be taken as firmly established in this state.

If, therefore, plaintiff's mortgage had been given only by Yancy Lennard, the tenant, plaintiff would not have acquired any lien on the cotton raised by him in 1912, and could not recover against the defendants for its conversion, and in any case the mortgage would have been subordinate to the landlord's lien under which defendants claim. But it was executed also by Nancy Lennard, who was all the while the owner of the land

[Gilliland Mercantile Company v. Pond Bros.]

on which all the parties clearly contemplated and intended that the mortgaged crop be raised, and who was also, during the year 1912, if not previously, the landlord of Yancy, her son. So, our conclusion must finally depend upon the effect of Nancy Lennard's joinder in the mortgage given to plaintiff.

It seems clear that, so far as the interest of Yancy is concerned, Nancy's joinder in the mortgage added nothing to its validity, and as to him the mortgage remained inoperative and void as to the crops of 1912. Did it, nevertheless, pass to the mortgagees a specific lien upon those crops, viz., the future landlord's lien of Nancy, the then and subsequent owner of the land? This question has been settled by the decision of this court in the case of *Ballard v. Mayfield,* 107 Ala. 396, 18 South. 29, where it was held that a landlord may effectually mortgage his interest in crops to be raised on his land by his tenants, thereby in effect transferring his lien to the mortgagee, and investing him with such an equity as would enable him to maintain a statutory claim suit for any part of the crops.

It may be urged, and it is in fact suggested by counsel for defendants, that in the *Ballard Case* there was an actually existing landlord's lien in favor of the mortgagor when he made the mortgage. The report of the case does not so show; but, if it did, there is no reason why the doctrine of potential existence, founded upon a present interest in the land, would not save from invalidity a landlord's mortgage of unplanted crops as well as a tenant's.

The rent note assigned by Nancy Lennard to defendants was not commercial paper, and the previous assignment of the same rent by virtue of the mortgage given by Nancy to plaintiff was constructively known to defendants by the record of the mortgage, and de-

fendants were liable as a matter of law to plaintiff, for their conversion of the cotton and the defeat of plaintiff's lien, to the extent of the landlord's lien, of course, which was the value of one bale of cotton weighing 500 pounds, and presumptively of the average quality of the cotton raised on the rented land.

It results from these considerations that the trial court erred in giving the affirmative charge for the defendants. The request for the affirmative charge for the plaintiff should have been restricted to the first count of the complaint, which was in case, since there could not have been a recovery under the trover court.

The judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.